## Case No. 10,700.

### The PALO ALTO.

[2 Ware (Dav. 343) 344; 1 6 N. Y. Leg. Obs. 262; 18 Hunt, Mer. Mag. 189.]

District Court, D. Maine. Oct., 1847.

SHIPPING — FORFEITURE FOR ILLEGAL TRADING—
REMISSION—CONDITIONS PRECEDENT—
REVOCATION.

1. A remission of a forfeiture by the secretary of the treasury, under the act of March 3, 1797, c. 13 [1 Stat. 506], granted before a libel or information has been filed, operates directly to revest the right of property and possession in the petitioner, and the collector, on his presenting the warrant of remission, is bound to restore it.

2. But, after the filing of a libel or information, the property is in the custody of the law, and the collector is the keeper of the court. The remittitur, being filed in court, is a bar to further proceedings to enforce the forfeiture, and the court will direct the suit to be dismissed and issue a precept to restore the property. But the property being in the custody of the court, the collector cannot restore the possession without an order of the court.

3. If the remission is on the payment of costs, this is a condition precedent, and the remission is inoperative until the costs are paid.

4. A tender of the costs, after a reasonable time allowed for taxing them, is equivalent to actual payment, to revest the right of property and possession. A neglect of the collector, seasonably to furnish the attorney with the cost of seizure and custody, will not defeat or suspend the right of the claimant to the possession of the property.

5. The secretary has the power, after a remittitur has been granted and communicated to the claimant, to revoke the warrant.

6. If the remission is free and unconditional, the power of revocation continues after the remittitur is filed and an order of restoration passed, and until the precept is finally executed by a delivery of the property into the possession of the claimant.

7. The order of restoration made by the court, is not properly a judicial but a ministerial act. It is the remission of the secretary that restores the right of property and possession, and the order of the court, carrying that into effect, may be demanded by the claimant ex debito justitiae.

8. If the remission be conditional, the secretary has no power to revoke it after the condition has been performed, whether the possession of the goods has been delivered to the claimant or not.

9. After the remission has been made known to the claimant, if the secretary revokes it, the

1 [Reported by Edward H. Daveis, Esq.]

revocation is inoperative until the knowledge of it is brought home to the claimant; and if the condition has been performed before he has knowledge of the revocation, the rights of the claimant become fixed, and the remission is irrevocable.

10. In all engagements formed inter absentes by letters or messengers, an offer by one party is made, in law, at the time when it is received by the other. Before it is received it may be revoked. So the revocation, in law, is made when that is received, and has no legal existence before. If the party, to whom the offer is made, accepts and acts on the offer, the engagement will be binding on both parties, though before it is accepted another letter or messenger may have been despatched to revoke it.

[Cited in Patrick v. Bowman, 149 U. S. 424, 13 Sup. Ct. 816.]

11. The exception to this rule, established by the jurisprudence of the courts, is, that if the party making the offer dies or becomes insane before it is received and accepted, the offer is then a nullity, though accepted before his death is known.

The manner in which this case came before the court will appear by a recapitulation of the antecedent facts. The Palo Alto, a small vessel of $20^{12}/_{95}$ tons burden, built and licensed for the fisheries, was seized July 15, 1847, by the collector of Wiscasset, and libelled for being engaged, while under a fishing license, in a trade other than that for which she was licensed, in violation of the act of February 18, 1792, c. 8, § 32, for licensing and enrolling vessels (1 Stat. 305). On the 21st of July, a claim was interposed by C. F. Barnes, and on the 23d he filed a petition confessing and praying for a remission of the forfeiture. On this petition, a summary inquiry was had into the circumstances of the case, according to the provision of the act of March 3, 1797, c. 13, § 1 (1 Stat. 506). A number of witnesses were examined and the following statement of facts made out and transmitted to the secretary of the treasury, together with a copy of the libel and the petition: "Special District Court, Portland, Sept. 11, 1847. And now, on a summary examination into the facts of the case (notice having been given to the attorney of the United States and the collector who made the seizure), it has been proved to my satisfaction that the said Barnes purchased said schooner Palo Alto, June 4th, 1847, of about 20 tons burden, built and intended for a fishing vessel; that his intention was to sell her again, but that he made a conditional agreement to let her for the fishing business if he did not succeed in effecting a sale; that in the early part of July he went in her to Portland, for the purpose of making a sale; that he advertised her for sale and made attempts to sell her, but failing in making a sale, he purchased the goods named in the bill of parcels (which was annexed to the petition), at Portland, and returned with them to Wiscasset. Most of the goods purchased are such as are used in fitting out fishermen, but the quantity was much greater than would be required for fitting out a single vessel of her size. He returned in the vessel to Wiscasset, and ar-

rived at a wharf near the custom-house, between 11 and 12 o'clock in the forenoon, making no attempt to conceal what cargo he had on board from the custom-house officers. The goods which he carried all belonged to himself, and he had none for other persons. It was in proof that the collector told him when he sailed for Portland, that he could not take goods under a fishing license. Barnes is by trade a sail-maker, and has heretofore been interested in two vessels which were engaged in coasting. He has also bought and sold small fishing vessels and pleasure boats. It was in proof that fishermen which came to Portland were in the habit of taking their outfits there."

On the 13th of September the secretary remitted the forfeiture, on condition of the payment of costs, and the warrant of remission was transmitted to the attorney on the 20th. This having been filed in court, on the 30th an order was made for the restoration of the property to the claimant, and a precept issued to the marshal to carry it into execution. The deputy marshal, in his return on the back of the precept, stated, that he called, on the 5th of October, and demanded of the deputy collector the property; but, the collector being absent, he refused to deliver it, and on the 8th he called on the collector at the custom-house, and again demanded the property, and he refused to deliver it; and he returned the writ in no part satisfied. Upon the 29th of September the secretary wrote to the attorney requesting him to return the warrant of remission. The attorney in reply informed him that it having been filed in court and become a part of the record, it was not in his power to return it. And on the 4th of October, the secretary again wrote to the attorney, stating that he had requested the warrant to be returned "for the purpose of revoking it, as on a full examination of the case, relief ought not to be granted to Mr. Barnes." On the 7th of October the attorney filed a motion for an order to the marshal to stay the execution of the writ of restoration and to return it unexecuted. The circuit court being then in session and remaining so until the last of the month, the parties were heard on the motion on the 4th of November.

Dist. Atty. Haines, for United States.
S. Fessenden, for claimant.

WARE, District Judge. The questions now to be determined arise on a motion of the district attorney for a supersedeas of the writ of restoration issued by this court. But as that has been returned unexecuted since the motion was filed, in the actual posture of the case the questions would arise more regularly on a motion of the claimant for an alias execution. But as the parties are disposed to waive matters of form, and wish for an early decision, we may perhaps dispose of the questions which have been discussed, on the attorney's motion.

It is argued by the attorney, in the first place, that the writ was improvidently issued, there being no authority in law for issuing such a writ in any case; and in the second place, if there is any authority, that the remission being made on the precedent condition of payment of costs, and the costs not having been yet paid, the writ was issued prematurely.

The argument on the first point is, that the remission of the secretary operates per se and independently of any action of the court to retransfer and revest the property in the petitioner. The act of March 3, 1797, c. 13, § 1 (1 Stat. 506), under which the remission is made, provides that when any person shall have incurred any penalty or forfeiture, or is interested in any vessel or goods, which have by law become liable to seizure and forfeiture in the cases therein mentioned, on certain proceedings being first had on petition to the judge of the district, in which the penalty or forfeiture accrued, they may be remitted by the secretary of the treasury, if in his opinion it was incurred without willful negligence or any intention of fraud; and he may direct the prosecution, if any has been instituted, to cease on such terms as he shall deem reasonable. In the case of a seizure of goods, if no prosecution has been commenced, it may be true that the warrant of remission operates directly to restore to the claimant his right of property and possession of the goods, and on the presentment of the warrant, the collector may be bound to restore them. If a suit has been commenced the remission may be pleaded in bar of a further prosecution of it. If it be for the recovery of a penalty, its operation is to discharge the obligation by putting an end to the suit and by being a bar to any future suit. No further action of the court is required than dismissing the action. But if the prosecution be for the purpose of enforcing a forfeiture in rem, the property libelled is placed in the custody of the court. It is in the keeping of the law. The warrant of remission does not then give the claimant a direct authority to retake the goods, but on filing the remittitur and complying with its terms, the court will direct a precept to be issued for the restoration of the property, and order the suit to be dismissed. Such has always been the practice in this, and, it is believed, in other districts. The statute does not indeed in such cases direct a writ of restoration, but it is necessary to the orderly course of judicial proceedings, so that the record may show what disposition is made of the property.

But it is said that in this case the remission is conditional on payment of costs, and that this being a condition precedent, the remission is inoperative until the costs are paid. This, as a general proposition, is undoubtedly true. A precedent condition must generally be performed before the right vests, or that must be done which the law holds to be equivalent to performance. After the remittitur in this case was received and filed, the claimant was present in court and tendered the costs to

the attorney. He declined to receive them, because the collector not having furnished him with the item of the costs of seizure and custody, he was unable to complete the taxation. It was not, therefore, the fault of the claimant that the costs were not paid, but that of the collector in not seasonably presenting his bill of charges. Now, it is a general rule of law that a condition, on the performance of which a right vests, shall be considered as performed, so as to perfect the right. where the party for whose benefit the condition is made has by his own act or fault prevented it from being performed. The Roman jurisconsults put this doctrine into a formula, and it is inserted in the Digest among the general rules of law as a universal rule: "In omnibus causis pro facto accipitur id in quo per alium morâe fit quo minus fiat." Dig. 50, 17, 39. "Tunc demum pro impleta habetur conditio cum per eum stat, qui, si impleta esset, debiturus erat." Dig. 35, 1, 81, § 5.[2] This rule is equally well established in the common law. It was the very point on which the decision turned in Hotham v. East India Co., 1 Durn. & E. [1 Term R.] 639. Ashurst, J., in delivering the opinion of the court, said that if any authority was necessary for this principle, which was a plain dictate of common sense, it was so held in Rolle, Abr. 445, and in many other books. The same doctrine is held in Jones v. Barkley, 2 Doug. 684; Merrit v. Rane, 1 Strange. 458; Blackwell v. Nash, 1 Strange, 535; Kingston v. Preston, 2 Doug. 689; 3 Salk. 108. It was also the point directly decided in Brown v. Bellows, 4 Pick. 179, 195. Indeed it is one of those obvious rules of justice and right, that finds a place in every system of jurisprudence that makes any pretention to cultivation and refinement, and flows directly from a great principle of natural equity and universal justice, which binds every one to answer for the damage occasioned by his own act. Pothier, Obl. No. 212; 6 Toullier, Droit Civil, No. 609. A condition, says the French Code Civil, is considered as performed when it is the debtor, bound under this condition, who has prevented it from being performed. Article 1178.

It is a familiar principle of law that a tender of performance, at a fit and convenient time and place, is for many purposes equivalent to a performance. A tender of money due on a bond or other contract, it is true, does not, like payment, discharge the debt, for the plaintiff may reply a subsequent demand and refusal, but it is a bar to further damages. And it is universally true, that when a right or title is made dependent on a precedent condition, and the party is ready and offers to perform it, and is prevented by the default of the party for whose

benefit it is reserved, the title vests absolutely and the condition is so far discharged that the right cannot be defeated. In this case the collector might undoubtedly claim a reasonable time to make out his bill of charges. The remittitur was dated September 18th, and transmitted to the attorney on the 20th, and the collector was immediately informed of it. Between that and the 30th there was, it would seem, ample time for him to ascertain and make out his bill of charges, and upon the payment, and, in my opinion, on the tender of payment, the claimant was entitled strictissimo jure to an order of restoration. On this state of the case the court ordered, on his depositing in the registry $150, a sum believed to be more than sufficient to cover all costs that would have accrued, that the usual precept for the restoration of the goods should be issued, and the deposit having been made, a precept was accordingly issued to the marshal to restore them to the claimant. He had already been kept out of the possession of the vessel and cargo for two months and a half, and it appeared to me that he ought not longer to be deprived of them, with a further accumulation of expense. My opinion is, that the order of restoration was properly made at the time and ought not further to have been delayed. But the bill of charges is now presented, amounting to $211.50, and, therefore, exclusive of the fees usually taxable on a libel, considerably more than the whole deposit; and it is now said to be apparent that the deposit does not cover the costs, and thus that they cannot be considered as paid. If the collector's charges are allowed, they certainly will exceed the deposit. But without intending to intimate any conclusive opinion, before the parties are heard in the taxation of costs, I will only suggest that some of the charges appear at the first blush to be of a novel and somewhat extraordinary character. There is a charge of twenty dollars for a journey to Portland of the deputy-collector, to consult the attorney on the filing of a libel, and another twenty dollars for his own attention to the case. When we come to a hearing on the taxation of costs, I may have occasion to ask the collector in what part of the fee bill established by law, or in what usage of the court, he finds an authority for taxing these items in a revenue seizure as a personal charge on the claimant. In some cases of expensive, perplexed, and protracted litigation, where the collector has incurred extraordinary expenses, and been at unusual trouble, in procuring evidence to establish a forfeiture, he has been allowed by the secretary of the treasury, on a certificate of the judge, to charge these against the United States' share of the fund; but I am not aware that it was ever thought that such expenses would be introduced into the bill of costs as a personal charge on the claimant. Without adverting to other items particularly, some of which appear of unusual amount, consider-

---

[2] The following are some of the texts of the Roman law in which this general rule is applied in contracts, legacies, and other cases. Dig. 35, 1, 24, 12; Dig. 12, 1, 50; Dig. 19, 2, 38; Dig. 22, 7, 20, 23; Dig. 45, 1, 25, § 7; Dig. 50, 17, 161.

ing the nature of the case, I will only observe, that the deposit is more than sufficient to meet all costs that are usually allowed in such cases. But if it were not, an execution may be issued on his stipulation, for the balance. But the ground of my opinion is, that the tender was, under the circumstances, equivalent to payment for the purpose of vesting in him a right to the possession of the property.

The principal question that arises on the motion, and that which has been mainly discussed at the argument, remains to be considered, and that is, the effect of the revocation, by the secretary, of the remittitur. But it ought first to be observed, that there is no actual revocation before the court. The letter of the secretary of October 4th, states that he had ordered the warrant of remission to be returned, for the purpose of revoking it. That, however, having been filed, an order of court passed upon it, and having become part of the record, there ought to be a regular and formal revocation placed on the files of the court. But the letter of the secretary is only a communication to the district attorney, expressing an intention to revoke, and not actually revoking and annulling the formal warrant of remission. That intention, however, having been expressed, for the purpose of raising the question, which has been elaborately argued, we may suppose the warrant of revocation to be made and entered on the files of the court.

On the part of the claimant it is argued that the secretary having once remitted the forfeiture and promulgated the warrant, and an order of court having passed thereon for the restoration of the property, this is a judgment of the court, and that the remission has thereby passed in rem judicatam and become irrevocable, and the rights of the claimant have become so vested that they cannot be divested by the act of the secretary.

In the first place, I think it may well be doubted, whether the act of the court, granting an order of restitution, is in strictness a judicial act. The power of remitting penalties and forfeitures, belongs exclusively to the secretary. The court has no authority to revise his decision or inquire into the grounds on which it is made. If a remission is granted, which on its face appears clearly to be illegal and beyond his power, it has indeed been suggested that the court may disregard it as having been improvidently issued by mistake. The Liverpool Packet [Case No. 8,405]. But if nothing of that kind appears, all the court has to do, is to carry it into execution by an order of restoration. In the preliminary steps for procuring a remission, the court, in the first instance, inquires summarily into the facts and circumstances of the case, and reports them to the secretary. It reports facts and not the evidence of facts. In making this statement the judge acts judicially. The facts must be proved by legal and compe-

tent evidence, and of the competency of the evidence he must judge. The Margaretta [Case No. 9,072]. The evidence must not only be competent and conduce to prove the facts stated, but must satisfy the judicial conscience of the judge that they are true. But whether, when proved, they are sufficient to establish the further fact that the forfeiture was incurred without willful negligence or intention of fraud, is referred exclusively to the judgment of the secretary of the treasury. It does not belong to the judge to express an opinion on this point. The secretary forms his opinion on the facts stated alone, and, under the law, no evidence can be submitted to him by either or both parties, as it is not on the evidence, but on the facts found and stated, that he is to act. If either party is not satisfied with them as stated by the judge, I by no means intend to deny that he may properly express his dissatisfaction to the secretary, but then the secretary cannot legally act on his representation, or on evidence produced by him in making up his judgment, whether the forfeiture was or was not incurred through excusable ignorance and without fraudulent intention. But he might in his discretion return the statement of facts to the judge for further inquiry and for hearing further evidence, and on such re-examination the facts may be restated or the statement be amended. It will then be on such restatement that the secretary will act, and not on the evidence of facts. But the power of remission is confined exclusively to his discretion, and when he has decided, the court has no judgment to exercise on the subject, but is bound ex debito justitiæ to issue the order of restoration. The act of the court, therefore, in making this order is more in the nature of a ministerial than of a judicial act, for it is simply to carry into effect the remission. That the secretary has a right to revise his decision after it has been made known to the parties, it seems to me, cannot well be questioned. If, in making up his judgment, he is supposed to act judicially, then, in analogy to the practice of other courts, it would seem that he must have the power, if he thinks injustice has been done, to review and revise his judgment. Every court has that power. If a decision once made and promulgated is irrevocable, it must be equally so, whether the decision is to remit or not to remit. Yet it would scarcely be contended, that when once the secretary had determined not to remit, and his decision had become matter of record by being placed on the files of the court, he could not revoke that determination for the purpose of admitting the proof of further facts. Still there must be some time when his power over his decision must cease. The question is, what that time is. If the order of restoration, awarded by the court, was strictly a judicial and not a ministerial act, I should admit the conclusion of the claimant's

counsel, that the secretary could not by his act annul a judgment of the court. But how far that would beneficially relieve the claimant, is by no means certain. For if it is a judgment of the court, it is a judgment grounded upon a single fact, and if the secretary should certify that the warrant of remission was improvidently issued, it would be the duty of the court to stay its proceedings, and if a writ of restoration had been awarded and not executed, to issue a supersedeas, till it could have time to re-examine the case, and if on such re-examination he should determine not to remit, to reverse its judgment. Such it seems to me would be clearly its duty, because it would then be apparent that the only foundation, on which it rested, failed. If so, it is not very material whether the order of restoration, on which the writ issues, be a judicial or ministerial act. Jones v. Shore, 1 Wheat. [14 U. S.] 462. The question would again return, when the power of the secretary, over his determination, is at an end?

We come, then, to the question, when does the remission become irrevocable? The argument of the district attorney is, that it does not become irrevocable until the goods are actually restored to the possession of the claimant. In support of this position, he cited the case of U. S. v. Morris, 10 Wheat. [23 U. S.] 246. The question in that case arose on a remission after a decree of condemnation. The power to remit after a final condemnation was contested. The same question had occurred in the circuit courts, and had been differently decided in different circuits. In this it had been held that the rights of the parties became fixed by the decree, and particularly that the title of the seizing officers to their shares in the forfeiture, became consummated and perfect beyond the secretary's power of remission. The Hollen [Case No. 6,608]; The Margaretta [supra]. A contrary doctrine had prevailed in other circuits. [U. S. v. Morris] 10 Wheat. [23 U. S.] 296. The case was very elaborately argued by eminent counsel, and was fully considered by the court. It was decided that the rights of the officers were inchoate by the seizure, but that they remained imperfect and contingent during the whole proceedings in court and after a final decree and of condemnation, and did not become consummated and indefeasible, until the money was actually paid over to the collector for distribution. Until the actual delivery over of the property, or its proceeds, under the decree, the rights of the officers, and, it would seem to follow, the rights of all others claiming an interest in the property or fund in litigation, whether legal, equitable, or precarious, like that of a petitioner confessing a forfeiture, were held to be dependent on the will of the secretary, under his power to grant or refuse a remission. The decision appears to me to be placed on the broad ground that all rights to the fund are subordinate to the secretary's power to remit or not to remit, until the process of law is finally closed by putting the party entitled into actual possession of the fund. The supreme court having established this principle, it appears to me to govern the present case, and after some reflection, that opinion was intimated to the parties. If the remission had been a free and unconditional remission, I still think that the decision in the case cited must have governed this; and that the secretary might revoke a warrant of remission, at any time before the precept of a court carrying it into effect was finally executed by the delivery of the goods to the claimant. Perhaps, independently of that decision, we might be brought to the same result from a more general principle of law. The forfeiture being confessed, and therefore the title of those claiming under it admitted, the remission, by which the property is restored to the claimant, partakes of the nature of a gift or donation, and being without consideration, it is in its own nature revocable at any time before the actual delivery of the thing. A donation after it is delivered, and not before, in the common law, takes the nature of a grant or contract executed, and becomes irrevocable. 2 Bl. Comm. 440, 441; 2 Kent, Comm. 438, 440; Smith v. Smith, 2 Strange, 955; Fletcher v. Peck, 6 Cranch [10 U. S.] 87; Com. Dig. "Bacon's," D 2. But, however this may be, there is a circumstance that distinguishes this case, and takes it out of the principle of the decision of the supreme court, and also extracts it from the more general principle of law, by which gifts are revocable until they are executed by delivery. It is this, that the warrant of the secretary is not a free and unqualified condonation or remission, but is coupled with a condition precedent to be performed by the grantee. Now it is an unquestioned rule of law, that if a grant is made on a condition precedent, no title vests until the condition is performed, so that if the condition be illegal or impossible, the title never vests. [U. S. v. Castillero] 2 Black [67 U. S.] 157; Co. Litt. 206. But being legal and possible, when it is once performed it vests absolutely, and the title becomes pure and perfect and discharged of the condition. 2 Cruise, Real Prop. 41; Com. Dig. "Condition," (B 3). It then vests as a purchase, and, if the condition be an onerous one, as a purchase for a valuable consideration. It has already been stated that the tender under the circumstances was equivalent to a performance, not for discharging the obligation to pay the costs, but for perfecting the title and rendering it indefeasible. It became thus a contract perfect by the mutual consent and concurrent acts of both parties, and cannot be dissolved but by the concurrence of both.

There is, however, another fact in the case to which it is proper to advert before closing this opinion. The tender of performance was

made on the 30th of September, and the letter of the secretary to the attorney, requesting him to return the warrant, bears date the 29th, the day before. If this letter is to be considered as an actual revocation of the remittitur, it may be said that it was revoked before the condition was performed. Considering it as such, when does the act of revocation take effect so as to annul the remission. This raises a question of no small difficulty, on which there has been no small diversity of opinion. The conclusion to which I have come, after considerable reflection and consulting all the authorities within my reach, is this, that the revocation has its effect to annul the remission at the time when it becomes known to the other party, and not before. To borrow a convenient phrase, more familiar in other systems of jurisprudence than in ours, if things had remained entire, until the revocation had been brought home to the knowledge of the claimant, that is, if nothing had been done on the part of the claimant to change the relation and condition of the parties in respect to this matter, the revocation would have annulled the warrant of remission, and the parties would have stood as though none had been issued. But the remission having been received and accepted by him, and the condition performed as far as it could be without the concurrence of the other party, the revocation then came too late. The remission had taken effect and become irrevocable.

My opinion proceeds on this general principle, that in all engagements inter absentes, when the negotiations are carried on by letters or messengers, an offer by one party, until it is made known to the other, is but an intention not expressed, propositum in mente retentum. If the messenger or letter can be overtaken before it arrives at its destination, it may be revoked; but if the revocation does not arrive until after the offer is received and accepted, and especially not until it has been acted upon, then it is too late. For the revocation is but a simple act of the will, a propositum, not res gesta, an act done, until after it is known, and of course can have no more effect than an intention not expressed, but confined within the breast of the party. It is a remark of one of the most profound jurists of the last age, that an act of the will not known is, in jurisprudence, as if it did not exist. "Une volontè qui n'est pas connue est en jurisprudence comme si elle n'existait pas." 6 Touiller, Droit Civil, No. 29.

This is the conclusion to which my mind has been brought after the most careful consideration I have been able to give to the subject; so that if the letter of September 29th be considered as a revocation, it must only be considered as such when the knowledge of it was brought home to the claimant, and this was after the condition was performed. At the same time it is freely admitted that this is a question of general jurisprudence, of no little intricacy, and that it is not easy to determine by any universal and inflexible rule when engagements entered into by letters or messengers, between persons residing at a distance from each other, become irrevocably binding on both parties. The question was pretty fully considered by the court of king's bench, in the case of Adams v. Lindsell, 1 Barn. & Ald. 681, and the decision was in conformity with the principle that I have adopted. But I infer from the reasoning of Best, C. J., in the case of Routledge v. Grant, 4 Bing. 653, that this decision was not entirely satisfactory to the court of common pleas, or at least, it receives but a qualified approval. The same general question was presented to the supreme court of Massachusetts, in McCulloch v. Eagle Ins. Co., 1 Pick. 278, and to the court of errors in New York, in Mactier v. Frith, 6 Wend. 103, and these courts came to opposite conclusions. It has been found not free from difficulties by the civilians, and perhaps it will not be found an easy task to reconcile all their opinions. The subject has been examined by Pothier (Contrat de Vente, No. 32); by 6 Touiller (Droit Civil, Nos. 30, 31, and notes; 7 Droit Civil, No. 321, and notes); and it was discussed by Merlin in a very elaborate argument before the court of cassation, with his usual logical acuteness and copiousness of learning (Repertoire de Jurisprudence, Vente, § 1, art. 3, No. 11, bis). To the general rule that has been stated there is one well-established exception. If the party who makes the offer dies or becomes insane before it is received and accepted, the offer is then a nullity, though accepted before the death is known.

On the whole, my opinion is, that the conditional remission having been received and accepted by the claimant, and he having tendered full performance of the condition and performed it as far as he could, without the concurrence of the other party, and so far as was necessary to vest and render perfect his title before the revocation became known to him, his title thereby became absolute and indefeasible. It then became a contract executed. Motion overruled.